Hay, Judge,
delivered the opinion of the court:
This is a suit by the plaintiff to recover from the United States the sum of $24,822.48, alleged by the plaintiff to be due it on account of deductions made by the United States from the hire of certain steam tugs chartered by the Government from the plaintiff for certain periods of time from November, 1917, to June, 1918.
The contract is set out in letters which were written by the parties. These letters are set out in full in the findings of the court. In the letter of the plaintiff of December, 1917, the following occurs: “ It is agreed that this letter will constitute the charter party until the formal one shall be entered into.” On December 7, 1917, the defendant in a letter of that date accepted the proposition of the plaintiff. All the boats hired by the Government were hired upon the same terms, and it was provided in the contract that the per diem hire should be paid to the plaintiff for each and every day of the charter period. These tugs were hired by *511 the Government for different periods of time, and the time of hire of each tug is set out in the findings of the court.
The tugs reported for service in accordance with the contract. The plaintiff rendered its bills monthly and for a full monthly period at a rate per day stated in the contract. The defendant paid the bills as they were rendered for the month of December, 1917, and thereafter refused to pay the full amount claimed and deducted therefrom various sums, which sums make up the amount of the plaintiff’s claim. The deductions were made in conformity with the logs of the vessels. These logs were kept by the captains and engineers of the boats, and were directed to be kept by the marine superintendent, Army Transport Service, who had charge of the boats, and these logs were kept on blanks furnished by the marine superintendent, an officer of the defendant.
During the time when these tugs were in the service of the Government the Army Transport Service had the entire use of the tugs and they were subject at all times to the orders and directions of the officers of the Government, and at no time during that period did the plaintiff have the use of and did not in any way interfere with or direct the operations of the said tugs.
The United States defends this suit upon the ground that the owner did not part with the possession, command, and navigation of the tugs during the period of the charter, but that it retained possession and command and performed the specific service for which the tugs were let. It is claimed that the charter was for service and not a demise, and consequently that the Government had the right to make the deductions for the time the tugs were not at its disposal.
The well-established law is that when a ship is let to hire, and the owner parts with the possession, command, and navigation of the same, the charterer is to be regarded as the owner for the period of the charter, and consequently can not charge the owner of the ship with time lost during the charter period. The decision in each case depends upon the facts and circumstances surrounding the transaction, but the possession, management, and control of the vessel seem to be.the vital facts upon which the decision must rest.
*512 In Reed v. United States, 11 Wall 591, 601, the court said: “ * * * but where the vessel herself is demised or let to hire, and the general owner parts with the posession, command, and navigation of the ship, the hirer becomes the owner during the term of the contract, and, if need be, he may appoint the master and ship the mariners, and he becomes responsible for their acts.”
In Leary v. United States, 14 Wall. 607, 610, the court said: “ The question as to the character in which the charterer is to be treated is in all cases one of construction. If the charter party let the entire vessel to the charterer with a transfer to him of its command and possession and consequent control over its navigation, he will generally be considered as owner for the voyage or service stipulated.” And in the same case, page 611: “All the cases agree that entire command and possession of the vessel, and consequent control over its navigation, must be surrendered to the charterer before he can be held as special owner for the voyage or other service mentioned.”
In the case of United States v. Shea, 152 U. S. 178, Mr. Justice Brewer, in speaking for the court, delivered a learned opinion in which he discussed very fully the question, and at. some length reviews the cases bearing on the question in issue here.
On page 189 he says: “No technical words are necessary to create a demise. It is enough that the language used shows an intent to transfer the possession, command, and control.” As particularly bearing on the facts which the court has found in this case, Mr. Justice Brewer says, p. 190: “ That the time for which the vessels were to be employed might be limited by the wishes of the Government does not affect the question as to whether, while so employed, they were to be under its exclusive control and management. A demise may be for a day as well as for a year and may be> terminable at the will of the lessor.” And again: “We think little significance is to be attached to the provisions in reference to furnishing a crew or supplying fuel. They were matters of detail affecting the price to be paid, but throwing no particular light on the question of hiring or control. If it be said that the clause requiring the Government to fur- *513 unnecessary case was a demise, may also, in like maimer, be said that the further clause as to the petitioner’s furnishing a crew was unnecessary if he was to retain the management and control. Any possible inference from one clause may be set off against a different inference from the other, but neither of them destroys the significance of the operative words of transfer nor outweighs that of the action of the parties in the execution of the contract.”
In the case of Plant Investment Go. v. United States, 45 C. Cls., 874, 885, Judge Booth, speaking for the court, says: “ The decision in each case depends upon the peculiar facts and circumstances' surrounding the transaction, and in consequence thereof it is difficult to determine with great accuracy into which class a charter party falls. In the class of cases relating to the charter of merchant vessels, wherein the parties are engaged in water transportation for profit, it seems reasonably certain that the courts have not hesitated to construe the charter party a demise of the vessel. It would not be accurate to say that in some instances vessels chartered for transportation of troops and munitions of war have not likewise been considered as a demise. In fact, always so held where nature of the service and attainment of the object of the voyage render the charterers’ absolute command and control necessary.”
Subjecting the facts in this case to the decisions cited in so far as the charter party is concerned, it is a contract not for service but is a demise of the tugs.
From the moment that these tugs were turned over to the Army Transport Service in pursuance of the contract they were under the absolute command and control of the officers of that service. The court finds as a fact that these tugs were subject at all times to the orders and directions of the officers of the Government, and that the plaintiff did not interfere with or direct the operations of the tugs. The very nature of the service to be rendered was such as to require these tugs to be absolutely under the control and subject to the orders of the officers of the Army Transport Service. The action of the parties in the execution of the contract showed that the plaintiff surrendered the possession; com *514 mand, and control of the tugs to the officers of the Government; that this surrender was required and expected; and that the officers of the Army Transport Service took charge of the tugs, navigated them, controlled them, and had absolute possession of them.
Under the law and the facts we are of opinion that the Government had no right to make the deductions complained of. A judgment will be entered for the plaintiff in the sum of $24,822.48. It is so ordered.
Graham, Judge; DowNey, Judge; and Campbell, O'hief Justice, concur.